UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| DIANE YOUNG, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CASE NO.: 1:13-cv-1602-TWP-DML |
| | ) |
| CAROLYN W. COLVIN, Acting | ) |
| Commissioner of the Social Security, | ) |
| Administration, | ) |
| | ) |
| Defendant. | ) |

## Report and Recommendation on Complaint for Judicial Review

This matter was referred to the Magistrate Judge under 28 U.S.C. § 636(b)(1)(B) and Fed. R. Civ. P. 72(b) for a report and recommendation as to its appropriate disposition. (Dkt. 22). As addressed below, the Magistrate Judge recommends that the District Judge AFFIRM the decision of the Commissioner of the Social Security Administration that plaintiff Diane Young is not disabled.

## Introduction

Plaintiff Diane Young applied in December 2010 for Disability Insurance Benefits (DIB) and Supplemental Security Income disability benefits (SSI) under Titles II and XVI, respectively, of the Social Security Act, alleging that she has been disabled since December 2, 2010, because of bipolar disorder, depression, and colitis. Two years earlier, Ms. Young had filed applications for disability benefits, but her applications were denied by a final decision issued by the Commissioner on

December 1, 2010, which was affirmed on judicial review.[1] That decision has *res judicata* effect, preventing any finding of disability before December 1, 2010. Its *res judicata* effect also explains why Ms. Young's new applications in 2010 alleged a disability onset of December 2, 2010. For purposes of DIB, Ms. Young's last date insured was June 30, 2012. To be entitled to those benefits, she must have become disabled after December 2, 2010, and on or before June 30, 2012. In contrast, SSI disability benefits are awardable if Ms. Young is disabled on or after her application date.

Acting for the Commissioner of the Social Security Administration following a hearing on April 23, 2012, administrative law judge Albert Velasquez issued a decision on May 31, 2012, finding that Ms. Young is not disabled for purposes of DIB or SSI. The Appeals Council denied review of the ALJ's decision on August 8, 2013, rendering the ALJ's decision for the Commissioner final. Ms. Young timely filed this civil action under 42 U.S.C. § 405(g) for review of the Commissioner's decision.

Ms. Young argues that the ALJ erroneously evaluated the severity of her mental impairments and their effect on her functioning. She contends that the evidence proved that her mental impairments were of listing-level severity and the ALJ was required to, but did not, obtain updated medical expert testimony at the hearing to provide an opinion whether a listing was met. She also contends that the

---

[1] *See Young v. Astrue,* Case No. 1:12-cv-00317-MJD-RLY (final judgment entered February 8, 2013).

ALJ's credibility analysis was flawed and the ALJ's RFC determination did not accurately account for her impairments.

The court first recounts the standard for proving disability under the Social Security Act and the court's standard of review of the administrative decision. The court then addresses Ms. Young's specific assertions of error.

## **Standard for Proving Disability**

To prove disability, a claimant must show that she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A) (DIB benefits); 42 U.S.C. § 1382c(a)(3)(A) (SSI benefits).[2] Ms. Young is disabled if her impairments are of such severity that she is not able to perform the work she previously engaged in and, if based on her age, education, and work experience, she cannot engage in any other kind of substantial gainful work that exists in significant numbers in the national economy. 42 U.S.C. § 423(d)(2)(A). The Social Security Administration ("SSA") has implemented these

---

[2] Two programs of disability benefits are available under the Social Security Act: DIB under Title II for persons who have achieved insured status through employment and withheld premiums, 42 U.S.C. § 423 *et seq.*, and SSI disability benefits under Title XVI for uninsured individuals who meet income and resources criteria, 42 U.S.C. § 1381 *et seq.* The court's citations to the Social Security Act and regulations promulgated by the Social Security Administration are those applicable to DIB benefits. For SSI benefits, materially identical provisions appear in Title XVI and generally at 20 C.F.R. § 416.901 *et seq.*

statutory standards by, in part, prescribing a five-step sequential evaluation process for determining disability. 20 C.F.R. § 404.1520.

Step one asks if the claimant is currently engaged in substantial gainful activity; if she is, then she is not disabled. Step two asks whether the claimant's impairments, singly or in combination, are severe; if they are not, then she is not disabled. A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). The third step is an analysis of whether the claimant's impairments, either singly or in combination, meet or medically equal the criteria of any of the conditions in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1. The Listing of Impairments includes medical conditions defined by criteria that the SSA has pre-determined are disabling, so that if a claimant meets all of the criteria for a listed impairment or presents medical findings equal in severity to the criteria for the most similar listed impairment, then the claimant is presumptively disabled and qualifies for benefits. *Sims v. Barnhart,* 309 F.3d 424, 428 (7th Cir. 2002).

If the claimant's impairments do not satisfy a listing, then her residual functional capacity (RFC) is determined for purposes of steps four and five. RFC is a claimant's ability to do work on a regular and continuing basis despite her impairment-related physical and mental limitations. 20 C.F.R. § 404.1545. At the fourth step, if the claimant has the RFC to perform her past relevant work, then she is not disabled. The fifth step asks whether there is work in the relevant economy

4

that the claimant can perform, based on her vocational profile (age, work experience, and education) and her RFC; if so, then she is not disabled.

The individual claiming disability bears the burden of proof at steps one through four. *Bowen v. Yuckert,* 482 U.S. 137, 146 n.5 (1987). If the claimant meets that burden, then the Commissioner has the burden at step five to show that work exists in significant numbers in the national economy that the claimant can perform, given her age, education, work experience, and functional capacity. 20 C.F.R. § 404.1560(c)(2); *Young v. Barnhart,* 362 F.3d 995, 1000 (7th Cir. 2004).

### Standard for Review of the ALJ's Decision

Judicial review of the Commissioner's (or ALJ's) factual findings is deferential. A court must affirm if no error of law occurred and if the findings are supported by substantial evidence. *Dixon v. Massanari,* 270 F.3d 1171, 1176 (7th Cir. 2001). Substantial evidence means evidence that a reasonable person would accept as adequate to support a conclusion. *Id.* The standard demands more than a scintilla of evidentiary support, but does not demand a preponderance of the evidence. *Wood v. Thompson,* 246 F.3d 1026, 1029 (7th Cir. 2001).

The ALJ is required to articulate a minimal, but legitimate, justification for his decision to accept or reject specific evidence of a disability. *Scheck v. Barnhart,* 357 F.3d 697, 700 (7th Cir. 2004). The ALJ need not address every piece of evidence in his decision, but he cannot ignore a line of evidence that undermines the conclusions he made, and he must trace the path of his reasoning and connect the

evidence to his findings and conclusions. *Arnett v. Astrue,* 676 F.3d 586, 592 (7th Cir. 2012); *Clifford v. Apfel,* 227 F.3d 863, 872 (7th Cir. 2000).

## Analysis

I. **The ALJ's Sequential Findings**

Ms. Young was born in 1966 and was 44 years old at the alleged onset of her disability in December 2010. She was 46 years old at the time of the ALJ's decision denying disability benefits. Her work experience includes jobs as a home health aide and in a fast food restaurant.

At step one, the ALJ determined that Ms. Young had not worked since the alleged onset of her disability. At step two, he identified bipolar disorder as a severe impairment, but found that Ms. Young's colitis was not a severe impairment. Ms. Young does not challenge that finding or the ALJ's decision that no functional limitations were necessary based on her colitis. At step three, the ALJ decided that the severity of Ms. Young's mental impairment did not satisfy listing 12.04, which describes affective disorders.

The ALJ next determined Ms. Young's residual functional capacity. He decided that Ms. Young is capable of work at all exertional levels, but should avoid certain hazards such as unprotected heights and dangerous machinery, and should be limited to "simple, repetitive work that would require no more than superficial interaction with supervisors, co-workers, or the general public." (R. 19). With this RFC and based on the testimony of a vocational expert, the ALJ determined that Ms. Young could not perform her past relevant work either because the skill level

6

exceeded her current mental capacity (the health aide job was a semi-skilled job) or because the jobs (health aide and fast food worker) required significant contact with the public. He found, however, that Ms. Young is capable of working as a kitchen aide, housekeeper-cleaner, and equipment cleaner, and that these jobs exist in significant numbers within the regional and national economy. (R. 21). Accordingly, the ALJ concluded at step five that Ms. Young is not disabled.

## II.    Ms. Young's Contentions

Ms. Young contends that the ALJ's decision at step three that her mental impairment was not of listing-level severity is not supported by substantial evidence for three main reasons. First, she argues that the ALJ improperly ignored mental health information preceding her alleged onset of disability, including GAF scores of 49 and 50. Second, she argues that the ALJ was required to obtain an additional medical opinion on whether a mental health listing was met because the opinions of the state agency psychologists were rendered before she was hospitalized in March 2012. Third, she contends that the ALJ only "selectively" evaluated the report of the consultative psychologist who conducted a mental status examination in February 2011.

If the court does not find that the step three decision lacks substantial evidentiary support, Ms. Young contends that the ALJ's residual functional capacity determination is erroneous because the credibility assessment on which it partly depends is patently wrong and because the ALJ did not properly account for her

7

deficits in social functioning and concentration, persistence, or pace, or for low GAF scores she asserts prove she cannot work.

**III. None of the asserted errors regarding the ALJ's step three decision permits reversal or remand of the Commissioner's decision.**

**A. Pre-disability onset information was not ignored.**

The disability applications under review by the ALJ alleged that Ms. Young became disabled on December 2, 2010. Ms. Young could not have alleged disability beginning at an earlier date because she previously had been adjudicated as not disabled in an opinion dated December 1, 2010, which was affirmed on judicial review. The earlier final decision of non-disability has *res judicata* effect (*see Groves v. Apfel,* 148 F.3d 809, 810 (7th Cir. 1998)), and Ms. Young did not seek to re-open that earlier decision. (R. 211).

The *res judicata* effect of the prior decision does not mean that all evidence preceding her alleged onset date in this case is irrelevant to whether Ms. Young became disabled on or after December 2, 2010, and can be ignored. Evidence from a prior proceeding can be relevant if, in combination with later evidence, it helps to establish that the claimant became disabled after the period that was under review in the first administrative proceeding. *Groves,* 148 F.2d at 810. For example, a claimant's impairments might have progressively worsened since an earlier disability proceeding and medical evidence from that earlier proceeding *in combination with later evidence* may show progressive deterioration and prove disability in the second case. *Id.* at 810-11.

8

Ms. Young argues that two pieces of evidence from her prior proceeding were ignored by the ALJ and should have been evaluated in deciding whether she was presumptively disabled at step three. They are a September 2008 mental status examination report prepared by a state agency physician from Ms. Young's first disability case, and a January 2009 psychological evaluation record from Howard County Behavioral Clinic. (Dkt. 17 at pp. 9-10). Even though the ALJ did not specifically mention either of these two psychological evaluation reports, any error was harmless under the circumstances of this case.

First, those records cannot by themselves be used to prove disability after December 2, 2010, and they are relevant only to the extent they fill gaps in or illuminate evidence of Ms. Young's mental impairment and its effect on her functioning on and after December 2, 2010. *Groves,* 148 F.3d at 811 (evidence from earlier case that was not strong enough to establish disability "still might reinforce or illuminate or fill gaps in the evidence developed for the second proceeding"). The court must thus reject Ms. Young's arguments that her GAF scores from the 2008 and 2009 evaluations prove she is disabled after December 2010, because a GAF score reflects an examiner's opinion of a person's overall mental functioning at the snapshot in time under evaluation. *Sambrooks v. Colvin,* 566 Fed. Appx. 506, 511 (7th Cir. 2014) (unpublished) (noting that a "GAF score is nothing more than a snapshot of a particular moment").[3]

---

[3] Moreover, the mental status examination conducted after Ms. Young's December 2010 onset produced a GAF score, in that examiner's opinion, of 55 (R.

9

Second, the ALJ did review and evaluate Ms. Young's mental status examination from February 2011, and that examination in turn reflected Ms. Young's reports of the history of her mental health evaluations and treatment. It addressed her report that she had been diagnosed with bipolar disorder at Howard County, described her psychiatric history, including abuse she suffered from a stepfather and from her mother, and described her mental problems in ways substantially similar to what she experienced in the past, including descriptions of "possible visual disturbances which may be construed as visual hallucinations." (R. 266-273). By evaluating the 2011 mental status examination report, the ALJ thus necessarily addressed pre-onset mental health information.

Third, the state agency psychologists (Dr. Horton and Dr. Gange) who reviewed the medical evidence and evaluated whether Ms. Young's mental impairment was of listing level severity relied on the entire record in concluding that Ms. Young did not meet a listing. Dr. Horton's analysis specifically mentions his consideration of the mental status examination reports from 2008 and from Howard Behavioral Health Services (R. 278), and Dr. Gange's report states he reviewed all of the evidence in the file in affirming Dr. Horton's earlier opinion that no listing was met. (R. 314). The ALJ, in turn, stated that he afforded significant weight to the opinions of the state agency psychologists that Ms. Young is not disabled. (R. 19). Thus, the 2008 and 2009 evaluations were taken into account as

---

273), indicating at least for that snapshot, Ms. Young's mental condition was not deteriorating as compared to the December 2008 and January 2009 evaluations.

part of evaluating the severity of Ms. Young's mental impairment and its effect on her functioning.[4] Thus, the court cannot agree with Ms. Young that the ALJ's analysis ignored important evidence establishing that Ms. Young became disabled on or after December 2, 2010.

**B. The ALJ was not required to summon a medical expert.**

Ms. Young contends that the ALJ's reliance on the opinions of the state agency psychologists that no listing was met is insufficient to support the step three decision because those opinions could not have considered later important medical evidence. In March 2012 (about one year after the last review of medical evidence by the state agency psychologists), Ms. Young was hospitalized after suffering an apparent break with reality. Her family brought her to the hospital after she had engaged in extraordinarily strange behavior, including taking a car and attempting to break into houses. Her family described her as having not been acting like herself. Hospital physicians, including a psychiatrist, diagnosed this event as "steroid-induced psychosis." Ms. Young had been prescribed and had taken steroids to treat her colitis condition and, according to the medical evidence in the record, when she was weaned from the steroid, her symptoms improved markedly and although she still expressed mild paranoia, she did not require commitment, her prognosis was good, and it was appropriate to discharge her. (R. 325-36).

---

[4] The ALJ and the state agency psychologists did not evaluate the B criteria in exactly the same way, but they agreed that Ms. Young was not markedly impaired in any area and had not suffered any episodes of decompensation of extended duration due to a mental impairment.

11

The ALJ's analysis of this evidence is faithful to the contents of the medical records of Ms. Young's hospitalization and the professionals' judgment that she had suffered a steroid-induced psychosis that was quickly remedied through weaning from the steroids. Nothing indicates that the original agency medical review that no listing was met might change based on this isolated event that treating doctors correlated to medication and not to a mental impairment. The court therefore rejects Ms. Young's contention that the ALJ was required to obtain an updated medical opinion by summoning a medical expert to the hearing. *See* SSR 96-6p (where new medical evidence may, in ALJ's opinion, change the state medical consultant's original finding that a listing was not met or medically equaled, the ALJ must obtain an updated medical opinion).

### C. Ms. Young's complaint about the ALJ's discussion of her February 2011 mental status examination is a request to reweigh the evidence.

Ms. Young also challenges the ALJ's description of the February 2011 mental status examination performed by Dr. Roberts and the ALJ's repeated characterization of her impairment as bipolar disorder. She suggests that bipolar disorder does not adequately describe the seriousness of her impairment. Ms. Young says that the ALJ's summary of Dr. Roberts's mental status examination reflects his picking out the parts favoring his decision and leaving out parts tending to prove disability. In the court's reading, the ALJ's description was not one-sided, and there is no indication that bipolar disorder is an incorrect description of Ms. Young's impairment or would have required any different analysis than the ALJ

undertook. Dr. Roberts concluded that Ms. Young (a person he found pleasant but troubled) did not meet the B criteria for mental impairments (whether classified as bipolar, major depressive disorder with possible mood-congruent psychotic features, or schizoaffective disorder) and that her performance on the mental status examination was "generally within normal limits and should not serve as barrier to most forms of gainful employment in an unskilled or semiskilled capacity." The ALJ specifically noted this conclusion. Ms. Young's complaint about the ALJ's treatment of Dr. Roberts's report is, at bottom, a request that the court reweigh the evidence, which it cannot do.

In summary, the court finds that none of Ms. Young's arguments attacking the ALJ's step three decision has merit. The step three conclusion that Ms. Young did not meet the B criteria and thus was not presumptively disabled is supported by substantial evidence.

## IV. Ms. Young's arguments related to the RFC are without merit.

Ms. Young contends that the RFC is not legally sound because it is grounded in an erroneous credibility determination and did not account for all functional deficits caused by her mental impairment. As explained below, the court finds that her arguments do not permit reversal or remand of the Commissioner's decision.

### A. The ALJ's credibility determination is not patently erroneous.

Ms. Young's argument that the ALJ's credibility determination is legally and factually unsound has no merit. It is not true, as Ms. Young argues, that the ALJ failed "to cite any evidence in support of his conclusory statements" or was

intentionally vague about the grounds for his credibility finding. (Dkt. 17 at p. 24). The ALJ's decision is replete with examples of reasons why he doubted Ms. Young's credibility about the severity of her mental impairment and its effects and the credibility of a sister who also testified at the hearing. He described numerous inconsistencies between the testimony and other documentary evidence and explained that those inconsistencies affected his credibility assessment. His explanation included that he disbelieved Ms. Young's statement that financial concerns had prevented her from seeking mental health treatment, based on a demonstrated ability by Mr. Young to obtain medical treatment for other ailments. Under these circumstances, the court cannot find that the ALJ's credibility determination is patently wrong and deserving of reversal. *Elder v. Astrue,* 529 F.2d 408, 413-14 (7th Cir. 2008) (ALJ's credibility determination will be declared "patently wrong and deserving of reversal" only when it lacks any explanation or support).

### B. The ALJ sufficiently explained the bases for accommodations within the RFC because of Ms. Young's mental impairment.

Finally, Ms. Young contends that the ALJ impermissibly did not account in the RFC for her "GAF assessments in the totally disabled range" and the moderate difficulties in social functioning and concentration, persistence, or pace ("CPP"). (Dkt. 17 at p. 25).[5] The court must reject this argument. First, the GAF

---

[5] Ms. Young's reply brief introduces a new argument, contending that the ALJ's RFC is erroneous because he failed to explain how Ms. Young could sustain employment when she has auditory and visual hallucinations and paranoia as reported in the 2009 psychological evaluation. This argument is waived because it

14

assessments to which Ms. Young refers are assessments from September 2008 and January 2009, before her alleged onset date. As the court explained earlier in this entry, those pre-onset GAF scores cannot be used to establish disability after onset because a GAF score is a snapshot in time. Second, the ALJ explained how his RFC accommodated Ms. Young's moderate difficulties in social functioning and CPP:

> [D]ue to [Ms. Young's] associated residuals [from her mental impairment] of irritability and social anxiety, she further would be limited to work involving superficial interactions with the public, co-workers, or supervisors. While I note a "moderate" limitation in the Paragraph B criteria for [CPP], this is based on the record as a whole, and all the situations the claimant might encounter. However, when limited to simple and repetitive tasks, as well as no more than superficial interaction with others, her ability to function is higher. Within these parameters, she is able to sustain the attention and concentration necessary to carry out work-like tasks with reasonable pace and persistence.

(R. 19). Ms. Young does not suggest the court should find fault with this explanation, and indeed, she does not address it all. Ms. Young has not demonstrated any error in the ALJ's RFC determination.

## **Conclusion**

For the foregoing reasons, the Magistrate Judge recommends that the District Judge AFFIRM the Commissioner's decision. Any objections to this Report and Recommendation must be filed in accordance with 28 U.S.C. § 636(b)(1) and

---

was not raised in the opening brief. Even so, the argument lacks substantive merit. The ALJ explained his reliance on the 2011 psychological evaluation suggesting that Ms. Young's "possible visual disturbances" were not from responses to internal stimuli and there was no evidence of delusions or flight of ideas. (R. 16). That explanation is substantial evidence supporting the ALJ's decision. The court cannot substitute its judgment for the ALJ's.

15

Fed. R. Civ. P 72(b). The failure to file objections within 14 days after service will constitute a waiver of subsequent review absent a showing of good cause for that failure. Counsel should not anticipate any extension of this deadline or any other related briefing deadlines.

IT IS SO RECOMMENDED.

Dated: February 17, 2015

*Debra McVicker Lynch*
Debra McVicker Lynch
United States Magistrate Judge
Southern District of Indiana

Distribution:

All ECF-registered counsel of record by email through the court's ECF system